Potter & Rayfield, Inc. v. Commissioner.
Potter & Rayfield, Inc. v. Commissioner
Docket No. 7472.
United States Tax Court
1946 Tax Ct. Memo LEXIS 253; 5 T.C.M. (CCH) 119; T.C.M. (RIA) 46053; February 28, 1946
*253 Herbert Johnson, Esq., 710 Rhodes-Haverty Bldg., Atlanta 3, Ga., for the petitioner. F. L. Van Haaften, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding is brought for a redetermination of deficiencies in tax as follows: Declared
Value Excess-
Year
Income Tax
Profits Tax
Potter & Rayfield, Inc.
Fiscal year ended 10-31-40
$6,651.29
$3,150.47
The question is whether petitioner realized taxable income for the fiscal year ended October 31, 1940, as the result of a discharge during that year of its notes and the issuance of shares of its Class B stock. This is a related case to Paul M. Potter, et ux., and Frederick H. Rayfield, et ux., Docket Nos. 7473 and 7474, respectively, also decided this day [. Findings of Fact Potter & Rayfield, Inc., (hereinafter sometimes referred to as the company) is a corporation organized under the laws of the State of Georgia on December 6, 1933. It is engaged in the business of operating a foundry and machine shop, manufacturing machinery and water cooling equipment. Some of its products are protected by patents *254 which it owns. The company was organized by Paul M. Potter and Frederick H. Rayfield. 4,000 shares of no-par value stock were issued, 1,990 to Potter and 1,990 to Rayfield, and 20 shares to Clarence H. Calhoun who acted as attorney at the organization and has continued in such capacity to date. In terms of percentage Potter and Rayfield each held 49.75 percent and Calhoun.5 percent of the company's capital stock. The shares were issued to Potter and Rayfield for assets of the Mutual Foundry & Machine Company which they had acquired at a receivers' sale. At that time the assets were valued by them at $30,000. The company kept its books and filed its Federal tax returns on an accrual basis of accounting and on the basis of a fiscal year ending October 31. Its returns were filed with the collector for the district of Georgia. Since the organization of the company Potter has held the offices of president and treasurer, and Rayfield the offices of vice president and secretary. Each has devoted his full time to-the business. On organization, Potter and Rayfield agreed that the compensation to each of them should be 5 percent of net sales of the company. In 1934 and subsequent years *255 the company was unable to pay all of its officers' salaries in the agreed amount without depleting its operating capital. The amount unpaid was accrued on the books of the company as a liability due the officers. In 1934 the company received a loan from the Reconstruction Finance Corporation (hereinafter referred to as R.F.C.), payable on a five-year basis. Under the terms of the loan the amount of salaries which could be withdrawn by the company's officers was limited. There was no limitation upon the amount of salaries which could be accrued upon the company's books. In the latter part of 1939 and early part of 1940 informal negotiations were conducted with the R.F.C. to obtain a new loan of about $13,000 for the same general purpose as the original loan. At this time the R.F.C. indicated that the large liability for officers' salaries did not look well in the balance sheet, and was not acceptable to them. They first suggested ten-year notes and later suggested that the liability should be capitalized. On October 15, 1939, the directors of the company held a special meeting, attended by Potter, Rayfield and Calhoun. The minutes of the meeting read in part as follows: The *256 officers realizing that the current position of the company would be adversely * * * [affected] by the withdrawal of the accumulated unpaid salaries and royalties, agreed to accept ten year non-interest bearing notes due October 31st, 1949. On October 31, 1939, the balance in Potter's account was $18,277.04 and the balance in Rayfield's account was $18,238.36. Ten-year non-interest bearing notes were issued in 1940 for these amounts, less $30 each for old age benefit tax, or in the face amount of $18,247.04 for Potter and $18,208.36 for Rayfield. The fair market value of the notes when received was 50 percent of their face amount. The notes were not executed until after the books were audited, sometime in 1940, prior to January 15. They were dated as of November 1 or October 31, 1939. Balance sheets of the company as of October 31, 1939, before and after the issuance of the notes payable to the officers, were reported by the company to be as follows: Assets
Before Issuance
After Issuance
Cash on hand and in bank and deposited on contracts
$ 824.20
$ 824.20
Notes Receivable
12,734.27
12,734.27
Accounts Receivable
38,473.30
38,473.30
Inventories
18,236.07
18,236.07
Machinery and Equipment (less depreciation)
18,420.40
18,420.40
Total Assets
$88,688.24
$88,688.24
Liabilities
Notes Payable (less than one year)
$ 8,400.00
$ 8,400.00
Accounts Payable
25,378.52
25,378.52
Accrued Salaries
1,301.38
1,301.38
Accrued Taxes
4,113.63
4,113.63
Mortgages Payable
7,250.00
5,750.00
Unpaid Salaries
39,791.82
4,776.42
Notes Payable - Officers
36,515.40
Common Stock
30,000.00
30,000.00
Surplus Deficit
(27,547.11)
(27,547.11)
Total Liabilities
$88,688.24
$88,688.24
*257 The balance sheets of October 31, 1939, correctly reflect the values of the assets shown thereon. For the fiscal year ended October 31, 1940, the company reported on its income tax return net income of $6,588.51. On April 30, 1940, a special meeting of the stockholders of the company was held at which all the stockholders were present. The minutes, in part, read as follows: In negotiating with the Reconstruction Finance Corporation for an additional loan, the officers of the company have been informed that RFC would not look with favor upon an application so long as there is an indebtedness outstanding by the company in favor of Mr. Potter and Mr. Rayfield, which indebtedness is wellknown to be substantially $36,000.00. It was proposed that Mr. Potter and Mr. Rayfield accept in lieu of the company's notes, which they now hold for said sum, stock in the corporation of a class junior to or inferior to the present outstanding stock. Mr. Potter and Mr. Rayfield accepted this proposal and agreed to surrender and cancel their notes upon the issuance to them of 1,000 shares of no par value Class B common stock of Potter & Rayfield, Inc., such stock to be inferior to the present *258 outstanding no par common stock; and this proposal and agreement was authorized by all stockholders present. It was understood and agreed that the Class B stock would be accepted in full payment of the company notes held by Potter and Rayfield. Certificates for 500 shares Class B common stock were issued under date of June 8, 1940, to Potter and Rayfield, respectively. At that date the balance due on the two notes to Potter and Rayfield amounted to $34,824.04. The difference between this sum and the total for which the notes were originally issued is accounted for by principal payments on the notes in the intervening period. The notes were thereafter destroyed. Condensed balance sheets as of April 30, 1940, showing the books of the company before and after the issuance of the Class B stock are as follows: Before Issuance
After Issuance
Assets
of Class B Stock
of Class B Stock
Cash
$ 2,627.38
$ 2,627.38
Notes and Contracts Receivable
14,669.47
14,669.47
Accounts Receivable
23,256.64
23,256.64
Inventory
23,448.46
23,448.46
Machinery and Equipment (Less Reserve for Depre-
ciation)
14,814.85
14,814.85
Prepaid Expense
320.56
320.56
$79,137.36
$79,137.36
Liabilities
Notes Payable
$13,897.92
$13,897.92
Accounts Payable
27,987.72
27,987.72
Accrued Expenses
5,007.26
5,007.26
$46,892.90
$46,892.90
Officers' Notes
34,824.04
Common Stock
30,000.00
30,000.00
Class B Stock
34,824.04
Surplus (Deficit)
(32,579.58)
(32,579.58)
$79,137.36
$79,137.36
*259 The stockholders agreed that the transfer, thus affected, would become part of the permanent capital of the company, and the three stockholders agreed that it would not change their relation to the company. The company issued the Class B stock rather than have the stockholders cancel the indebtedness because they were advised by their counsel that a cancellation of indebtedness might produce taxable income. The new loan for which negotiations took place with the R.F.C. was never made because the business of the company improved. By the fall of 1940 the company had made sufficient net profits to equal the amount of the loan desired and final payment on the original loan from R.F.C. was made in November, 1940. In their respective individual tax returns for the calendar year 1940 neither Rayfield nor Potter reported any income as being realized from either the receipt of the notes or the Class B stock. In its return for the taxable year ended October 31, 1940, the company reported no income as the result of the transaction. The company entered as deductions on its income tax returns for fiscal years ended October 31, 1934, through 1939, the amounts of salaries and bonuses payable *260 to Potter and Rayfield. In 1936 he company failed to receive a tax benefit to the extent of $3,049.82, and in 1937 $4,590.28, by reason of these deductions. The company's 1938 tax return deducted an aggregate for salaries and bonuses to Potter and Rayfield of $21,521.02. Its net loss shown on the return after this deduction was $12,435.11. In 1939 the company deducted aggregate salaries and bonuses for Potter and Rayfield of $11,637.21. Its net loss after such deductions was $9,617.05. The amount due Potter and Rayfield was shown on the books as $20,889.92, $9,252.71 of which was not claimed on the income tax return. In his notice of deficiency to the company respondent stated: It is held that the transaction whereby notes previously issued for unpaid salaries were cancelled by the issuance of capital stock resulted in a taxable income in the amount of $34,824.04. Opinion The deficiency against the corporation is now said by respondent to be found in the alternative and is presumably eliminated upon our determination in the cases of the individual petitioners that they are taxable. In any event, that phase of respondent's determination could not be sustained. , *261 affirmed (C.C.A., 1st Cir.), . Decision will be entered for the petitioner.